# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

JENNIFER TYLER                                                                                    PLAINTIFF

V.                                        No. 3:22-CV-00096-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                    DEFENDANT

## ORDER

### I. Introduction

Plaintiff Jennifer Tyler applied for disability benefits, alleging disability beginning on May 1, 2019. (Tr. at 11). Her application was denied initially and upon reconsideration. *Id*. Tyler then requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. After conducting a hearing, the ALJ denied her application on June 15, 2021. (Tr. at 22). The Appeals Council later denied Tyler's request for review of the ALJ's decision. (Tr. at 1). Therefore, the ALJ's denial of Tyler's application for benefits stands as the final decision of the Commissioner.

Tyler filed this case seeking judicial review of the decision denying her benefits. For the reasons stated below, the Court[1] affirms the ALJ's decision.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 11*.

## II. **The Commissioner's Decision**

The ALJ found that Tyler had not engaged in substantial gainful activity since the application date of August 30, 2019.[2] (Tr. at 13). At Step Two of the five-step evaluation, the ALJ found that Tyler had the following severe impairments: morbid obesity and degenerative disc disease of the cervical and lumbar spine. *Id*.

After finding that Tyler's impairments did not meet or equal a listed impairment, the ALJ determined that Tyler had the residual functional capacity ("RFC") to perform the full range of work at the sedentary exertional level. (Tr. at 15-20). The ALJ found that Tyler was unable to perform her past relevant work as a janitorial services supervisor. (Tr. at 20). Taking Tyler's age, education, work experience, and RFC into consideration, the ALJ applied Rules 201.21 and 201.28 of the Medical-Vocational Guidelines and determined that Tyler was not disabled. (Tr. at 21). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2; Social Security Ruling ("SSR") 83-11, 1983 WL 31252 (1983).

---

[2] For supplemental security income claims, the relevant time-period begins on the date the application was filed. 20 C.F.R. §§ 416.335, 416.920. Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)–(g).

## III. Discussion

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in

the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B. Tyler's Arguments on Appeal

Tyler contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ failed to meet his duty to develop the evidentiary record and erred in finding her capable of performing sedentary work. After reviewing the record as a whole, the Court concludes that the ALJ's decision should be affirmed.

#### 1. *RFC Assessment*

Tyler argues that her RFC is inconsistent with her medical records and hearing testimony. She contends that the ALJ erred by discounting the credibility of her subjective complaints and by relying on medical opinions from state agency physicians who only reviewed a portion of her medical records. The Court finds that substantial evidence supports the RFC determination.

The RFC is an administrative assessment that represents the most a claimant can still do despite her limitations. 20 C.F.R. § 416.945(a)(1). The ALJ determines the RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own description of her limitations. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). "Because a claimant's RFC is

a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quotation omitted).

In making the RFC finding, the ALJ considers all the claimant's symptoms, and the extent to which they are consistent with the other record evidence, by evaluating factors such as: the claimant's prior work record; her activities of daily living ("ADLs"); the duration, frequency, and intensity of her pain; precipitating and aggravating factors; the dosage, effectiveness, and side effects of her medication; and functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). However, the ALJ is not required to discuss each *Polaski* factor, and the ALJ may discount a claimant's complaints if they are inconsistent with the record as a whole. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The Court "defers to the ALJ's determinations as long as good reasons and substantial evidence support the ALJ's evaluation of credibility." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (internal quotation omitted).

The ALJ considered all of the relevant evidence in the record in determining Tyler's RFC. Tyler alleged that she was disabled because her impairments caused her constant total-body pain and severely limited her ability to function. (Tr. at 44). She reported that she was unable to dress herself, could hardly bathe herself, and did not cook her own meals. (Tr. at 16, 496-97). She claimed that she could not stand

for more than five minutes or walk more than ten feet before needing to stop and rest, and that she struggled just to lift five to ten pounds. (Tr. at 17, 43-46, 500). She told the ALJ that she relied on her teenaged children to make meals, clean the house, and help her. (Tr. at 17, 49).

The medical records show that on August 19, 2019, Tyler began seeing pain management specialist Sunil Gera, M.D., to treat pain in her back, hips, legs, feet, and shoulders which was constant and associated with numbness in the left leg and bilateral fingers as well as weakness in both legs, right arm, and bilateral grip. (Tr. at 1090). A nerve conduction study showed compression of the sciatic nerve bilaterally, right-sided more than the left side. (Tr. at 1092). A CT study of her pelvis and abdomen showed levoscoliosis of the lumbar spine. *Id*. Dr. Gera prescribed physical therapy and pain medications, and ordered MRIs of the lumbar, cervical, and thoracic spines. *Id*. At a follow-up appointment, Dr. Gera advised that her MRI results showed "nothing surgical, only disc bulges as well as osteophytosis." (Tr. at 1094). He treated her hip pain with steroid injections. *Id*.

To treat her lumbar pain, Dr. Gera performed radiofrequency ablation (L3-S1) in early 2020 with good results. (Tr. at 1280-81, 1287, 1336). In June 2020, Tyler told Dr. Gera that she was having severe pain in the left hip joint that had been injected nearly a year before. (Tr. at 1332). She reported good results from a second injection. (Tr. at 1328). She also underwent radiofrequency ablation (L1-2) to good

results and told Dr. Gera that she "was very thankful for the way she [was] improving." (Tr. at 1329-31).

In July 2020, Tyler reported that her neck was "doing good" after receiving cervical medial nerve branch blocks. (Tr. at 1325-27). However, she reported severe pain in the thoracic area of her back, and she had started having muscle spasms in her back, left thigh, and leg. (Tr. at 1325). An injection in her back relieved most of her muscle pain, and after receiving thoracic nerve blocks, she reported "no more pain in the thoracic area." (Tr. at 1321, 1326). During that visit, Dr. Gera treated Tyler's knee pain with a steroid injection that provided "good relief." *Id*. She also received steroid injections for both hip joints. (Tr. at 1319-20). At a follow-up in September 2020, Exams showed no tenderness in any spinal area or in her sacroiliac joints. (Tr. at 1318). She complained of right shoulder pain, but Dr. Gera told her that he would refrain from using more steroid injections for a few months.

On October 9, 2020, Tyler again complained of joint pain, this time in all her joints. (Tr. at 1317). Dr. Gera explained that he could not do any intervention and gave her pain medicine. *Id*. In November 2020, her back exam was normal, but she reported pain in her right sacroiliac joint and received an injection. (Tr. at 1316). She received another left hip injection in December. (Tr. at 1314).

She also complained about carpal tunnel numbness and cervical pain. Dr. Gera noted that the initial cervical nerve block had lasted more than five months, "which

[was] a good thing." *Id*. After a carpal tunnel injection and another cervical nerve block, Tyler reported "minimal pain" on January 15, 2021. (Tr. at 1344). At that time, Dr. Gera determined no further intervention was necessary and anticipated decreasing the dosage of her pain medications. *Id*. On March 1, 2021, he noted that Tyler "has been responding nicely to the interventional treatment and is on a very low dose of narcotics." (Tr. at 1343). Her carpal tunnel pain and numbness had fully resolved. *Id*.

The ALJ found that the clinical exams were inconsistent with Tyler's allegations of disabling symptoms because they showed a "varied level of impairment based on her treatment." (Tr. at 19). "To that end," the ALJ remarked, Tyler had "also shown a good response to treatment, resulting in a wider [RFC]." (Tr. at 19-20). The medical records, particularly Tyler's later reports of "minimal pain" requiring only a "very low dose of narcotics," fully support these findings. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) ("Impairments that are controllable or amenable to treatment do not support a finding of total disability.").

Tyler argues that the ALJ should have given more weight to her severely limited daily activities in the credibility analysis. But her reports are contradicted by other evidence in the record. For instance, the ALJ specifically noted that Tyler worked part-time as a dollar store cashier for months beyond her alleged disability onset date. (Tr. at 13). Tyler's continued ability to work undermines her subjective

complaints and her claim of total disability. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

Tyler also alleges the ALJ erred in finding that she had been able to perform work within a sedentary RFC because her past jobs were performed at a *higher* exertional level and involved a lot of walking, climbing, and standing. This argument is not well-taken. The regulations assume that an individual who is capable of heavier work can also do sedentary work. 20 C.F.R. § 416.967(b)–(d). In sum, the ALJ's credibility analysis was guided by the proper factors, and the ALJ provided good reasons for discounting the credibility of Tyler's subjective complaints. The court will therefore defer to the ALJ's credibility evaluation.

The Court also finds no error in the ALJ finding the prior administrative medical findings from two state agency physicians to be persuasive. Ronald Crow, D.O., and Rosey Seguin-Calderon, M.D., both reviewed Tyler's medical records and opined that she was capable of performing sedentary work, which includes standing and/or walking for two hours per workday, sitting for six hours per workday, and lifting no more than 10 pounds.[3] (Tr. at 114-17, 132-35). Tyler argues that their

---

[3] Dr. Crow and Dr. Seguin-Calderon also assessed postural limitations, finding that Tyler was only capable of occasional stooping and limited to never climbing ramps, stairs, ladders, ropes, or scaffolds. (Tr. at 115, 133). The ALJ found these opinions persuasive but declined to adopt the postural limitations as part of Tyler's RFC. (Tr. at 16-19). Tyler does not challenge this omission on appeal, but the Commissioner identifies it as harmless error. Some district court decisions in the Eighth Circuit have suggested that when an ALJ finds an opinion persuasive, the ALJ should adopt all of its limitations or explain the reasons for not doing so. *See Mark S. E. v. Kijakazi*, No. 20-CV-1954, 2022 WL 834513, at *4-5 (D. Minn. Mar. 21, 2022) (collecting cases). However,

9

opinions cannot constitute substantial evidence to support the RFC because they did not review any medical records submitted after May 2020. But Tyler has failed to demonstrate that her condition worsened after that time, such that the physicians' assessments were no longer consistent with the overall evidence of record. Rather, the medical records indicate an overall improvement in her physical condition. Substantial evidence, including medical evidence, supports the sedentary RFC. Tyler has failed to show that she is more limited than the ALJ found.

2. *Development of the Record*

Tyler urges that the ALJ generally failed to develop the record regarding her limitations because he did not obtain medical opinion evidence from a treating or examining doctor. This argument is meritless. The Eighth Circuit has unequivocally stated that "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence) and *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)). The RFC is supported by both the reviewing physicians' opinions and the medical records prepared by Tyler's

---

court decisions are not all aligned on the subject. *See, e.g.*, *Koss v. Kijakazi*, No. 4:20-CV-996, 2022 WL 715009, at *9 (E.D. Mo. Mar. 10, 2022) ("[A]n ALJ is not required to adopt or include all limitations assessed by a medical source, even if the source is found to be persuasive."). Without definitive guidance from the Eighth Circuit—and given Tyler's decision not to raise, or respond to, the issue in her briefing—the Court will not address the alleged error or its effects on the ALJ's decision.

treating physicians. No further evidence was necessary for the ALJ to make the disability determination.

## IV. Conclusion

For the reasons stated above, the Court concludes that the ALJ applied proper legal standards and substantial evidence on the record as a whole supports the ALJ's decision. The finding that Tyler was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 7th day of April, 2023.

_____
UNITED STATES MAGISTRATE JUDGE